UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MALIK S.K. WRIGHT,

                    Petitioner,       **MEMORANDUM AND ORDER**
                                              09-CV-4226(KAM)(LB)
   -against-

CAMERON LINDSAY,

                    Respondent.
------------------------------------X

**MATSUMOTO, United States District Judge:**

     *Pro se* petitioner Malik S.K. Wright ("Wright" or "petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons (the "BOP") violated his constitutional rights by not allowing him to serve the remainder of his sentence in a Residential Reentry Center ("RRC") or on home confinement. (Doc. No. 1, Pet'r Mem. in Support of a Pet. for a Writ of Habeas Corpus under 28 U.S.C. § 2441 ("Pet.") at 1, 8-10.) Petitioner seeks an order of the court directing the BOP to reconsider him for immediate RRC placement pursuant to 18 U.S.C. § 3624(c) ("Second Chance Act"). (Pet. at 10.) While the court commends Wright on his well-written petition and on his successful efforts at rehabilitation while incarcerated, for the reasons that follow, the court denies Wright's petition.

1

## BACKGROUND

Petitioner was convicted in the United States District Court for the District of South Carolina on July 30, 1993 for Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(A)(1). (Pet. at 1-2; Doc. No. 4, Resp't Opp'n to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Opp'n") at 4 and Ex. 1.) He is currently serving a 240-month sentence at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (Pet. at 1; Opp'n at 4 and Ex. 1.) Wright arrived at the MDC on February 3, 2009. (Opp'n, Ex. 2, 11/5/09 Decl. of Kevin Page ("11/5/09 Page Decl.") at ¶ 7.) He is scheduled to be transferred to a RRC on March 10, 2010 (Opp'n at 2), and scheduled to be released from BOP custody on September 2, 2010. (Pet. at 2; 11/5/09 Page Decl. at ¶ 7.)

On February 24, 2009, petitioner meet with his Unit Team, the division of the BOP responsible for making RRC placement recommendations for prisoners at the MDC, for an Initial Classification, during which his history and possible RRC placement were discussed. (Pet. at 2 and Ex. A at 1-3.) Although petitioner requested a twelve month RRC placement to his Unit Team, the Initial Classification Report states that petitioner "will be recommended for 180 days of RRC placement pursuant to the [Second] Chance Act." (*Id.*, Ex. A at 2.)

During the meeting, petitioner requested a review of that six month recommendation. (*Id*. at 3.)

Also on February 24, 2009, petitioner submitted an "Inmate Request to Staff" to his case manager, seeking a twelve month RRC placement. (*Id.*, Ex. B.) On February 26, 2009, petitioner wrote to Kevin Page ("Page"), manager of his Unit Team, and requested a longer RRC term in order to "adjust to and prepare for re-entry into the community." (*Id.* at 2 and Ex. C at 1.) Petitioner also filed an "Inmate Request for Informal Resolution" on April 1, 2009. (*Id.* at 3 and Ex. E at 1.) In it, petitioner sought a reevaluation of his six month placement recommendation. (*Id.*, Ex. E at 2.) On April 8, 2009, Wright was informed that his RRC placement would be reviewed when his "relocation is approved." (*Id.* at 1.)

On April 10, 2009, petitioner filed a "Request for Administrative Remedy," again seeking a twelve month RRC placement due, in part, to the fact that he had "zero family support or financial assets." (*Id.* at 3 and Ex. F at 2.) On May 12, 2009, Cameron Lindsay, Warden of the MDC, responded to petitioner's request and informed petitioner that his RRC placement recommendation could not be reviewed until the United States Probation Office issued "an approved relocation plan." (*Id.* at 3 and Ex. G.)

3

On or about June 15, 2009, petitioner met with his Unit Team again to discuss his RRC placement. (11/5/09 Page Decl. at ¶ 6.) The Unit Team made the determination that, for the last 179 days of his sentence, Wright would be placed in a RRC facility located in Newark, New Jersey, which was specifically requested by Wright. (*Id.* at ¶¶ 6, 10.) The BOP asserts that it made the determination that 179 days was proper based on: (1) the limited availability of bed space at the Newark RRC; (2) petitioner's ability to live with his family in New Jersey once released; and (3) the fact that petitioner will have his family's assistance in reestablishing himself in the community. (*Id*. at ¶¶ 8-10.) The Unit Team memorialized its recommendation in a Residential Re-Entry Center Consideration form and in an Institutional Referral for Community Corrections Center Placement form, which was eventually sent to the Newark RRC facility. (*Id.* ¶¶ 11-12.)

On June 21, 2009, petitioner sent an appeal to the Northeast Regional Director of the Federal Bureau of Prisons "seeking the maximum RRC placement" period. (Pet. at 3 and Ex. H.) The Regional Director, D. Scott Dodrill ("Dodrill"), sent a response on July 23, 2009 stating that the BOP is "granted broad discretion in reaching [its] decision and [petitioner] present[ed] no evidence this discretion was abused." (*Id.* at 3 and Ex. I.) Based on the MDC's individualized determination of

petitioner's "situation and transitional needs," Dodrill denied petitioner's appeal. (*Id.*, Ex. I.) Petitioner then appealed to the General Counsel of the Federal Bureau of Prisons on July 30, 2009. (*Id.* at 3 and Ex. J at 1.) Petitioner contends that he received no response or notice of extension of time to respond from the General Counsel's Office. (*Id.* at 3.)

On September 22, 2009, Wright filed the instant petition, seeking an order from the court directing the BOP to reconsider him for immediate transfer to the Newark RRC or home confinement.[1] (*Id.* at 10.) Petitioner asserts that the BOP did not in good faith consider allowing him to spend up to 12 months in a RRC. (*Id.* at 4.) Specifically, he argues his RRC placement recommendation should be reconsidered by the BOP due to: (1) the extraordinary length of his incarceration, (*id*. at 5); (2) the fact that petitioner has no family support, (Doc. No. 6, Pet'r Reply Brief ("Reply") at 5); and (3) the MDC's categorical rejection of all prisoners who request a RRC term of more than six months. (Pet. at 7-8.) Petitioner further argues that he received disparate treatment from other similarly situated inmates at the MDC in violation of his equal protection rights. (*Id.* at 8-9.)

---

[1] As respondent correctly asserts, petitioner's alternative request for immediate release to home confinement is improper, as home confinement is limited to a period of six months under Title 18 United States Code section 3624(c)(2). (Opp'n at 2, n.1.)

Respondent, Warden Cameron Lindsay ("respondent"), contends the BOP did not exceed its authority or otherwise act improperly in making its 179-day RRC placement recommendation. (Opp'n at 10.) Specifically, respondent argues that the BOP made an individualized RRC placement recommendation for petitioner based on his needs, that "[p]etitioner has offered no legal basis to support a lengthening of his RRC placement date," (*id.* at 6), and that the "placement was of sufficient duration to provide the greatest likelihood of successful reintegration into the community." (*Id.* at 9.) Respondent asserts that petitioner's equal protection claim fails on the merits, as petitioner has not adequately demonstrated "that he has been denied extended placement in a RRC due to purposeful discrimination." (*Id.* at 12.)

On January 28, 2010, in response to Wright's contention, which was raised for the first time in his Reply, that he does not have the support of his family or a place of residence secured upon release from incarceration, the court ordered the respondent to conduct further inquiry of Wright and the Newark RRC and to submit a supplemental declaration addressing:

> 1) when, if ever, Mr. Wright advised the Unit Team of the existence and nature of his family support; 2) the facts on which the Unit Team made the determinations contained in paragraphs 8 through 10 of the 11/5/09 Declaration of Kevin Page; 3) whether the Newark RRC

6

> currently has a bed available for Mr. Wright; and 4)
> whether, based on further discussions with Mr. Wright,
> and a member of Mr. Wright's family (if Mr. Wright
> consents), whether Mr. Wright has, in fact, secured a
> place of residence upon his release from
> incarceration.

(1/28/10 Order.) The court further ordered respondent to inform the court whether the results of the investigation warranted reconsideration of the length of Wright's placement in a RRC. (*Id.*)

On February 5, 2010, respondent filed a letter and supplemental affidavit, stating that on February 5, 2010, petitioner confirmed that he still intends to live with his cousin in Hillside, New Jersey following his release from the RRC; that during an interview with a probation officer from the District of New Jersey on May 19, 2009, petitioner's cousin had agreed to allow petitioner to live with her at her home in Hillside, New Jersey, and that the probation officer approved and conveyed the arrangement to Wright's Unit Team; that petitioner's uncle had advocated on his behalf to a congressman; and the Newark RRC currently has a bed available. (Doc. No. 11, 2/5/10 Resp't Letter at 4-5; Doc. No. 11, 2/5/10 Decl. of Kevin Page ("2/5/10 Page Decl.") at ¶¶ 5-8.) Respondent concluded that "[g]iven that Petitioner does indeed appear to have family support and a place to reside upon his release from an RRC . . . the length of Petitioner's placement is sufficient to allow him

7

to successfully reintegrate into the community."  (2/5/10 Resp't Letter at 6.)

## DISCUSSION

### A. Lack of Good Faith Claim

#### 1. Legal Standard and the Second Chance Act

The Second Chance Act, 18 U.S.C. § 3624(c), governs RRC assignments.  It provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).  The Act mandates that the pre-release placement be "determined on an individual basis" and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community."  18 U.S.C. § 3624(c)(6)(B) and (C).  The BOP has discretionary authority in directing the place of imprisonment as well as the transfer of federal prisoners to RRCs.  18 U.S.C. § 3621(b); *see Levine v. Apker*, 455 F.3d 71, 80 (2d Cir. 2006) ("Congress's use of the language 'may designate' in [18 U.S.C. § 3621(b)] seemingly endows the BOP with 'broad discretion.'").  When determining the place of imprisonment or transfers, the BOP must consider:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history

8

and characteristics of the prisoner; (4) any statement by
the court that imposed the sentence -- (a) concerning the
purposes for which the sentence to imprisonment was
determined to be warranted or (b) recommending a type of
penal or correctional facility as appropriate; and (5) any
pertinent policy statement issued by the Sentencing
Commission pursuant to section 994(a)(2) of title 28.

*Id.*

The legislative history of the Second Chance Act "'prohibit[s] Federal judges from sentencing defendants to a community correction facility'" and "'reiterates that the Bureau of Prisons has sole and exclusive authority to designate the facility where prisoners will serve a sentence and to order a transfer from one facility to another.'" *Daraio v. Lappin*, No. 08-CV-1812, 2009 WL 303995, at *6 (D. Conn. Feb. 9, 2009) (quoting H. Rep. No. 110-140, *20, reprinted in 2008 U.S.C.C.A.N. 24, *38 (May 9, 2007) ("[T]he Director of the Bureau of Prisons [possesses] discretion to place an offender in a halfway house for up to 12 months prior to the offender's release date.")). Further, "the BOP retains discretion . . . provided such pre-release confinement is practicable and the BOP considers the statutory factors." *Id.* (citing 18 U.S.C. § 3624(c)(1)). Therefore, in order for a court to order the BOP to reconsider its placement recommendation, the court must find that the BOP has abused its discretion by failing to consider the statutory factors. *See Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009) ("[O]nce the court has determined

that the BOP did not exceed its authority in reaching its decision, it is beyond the purview of the court to second guess the outcome.")

### 2. Analysis

The court finds that the BOP was within its authority to grant Wright 179 days of pre-release community confinement at the RRC. Page's initial affidavit shows that the Unit Team reviewed the BOP's files for information related to Wright's criminal history, work history, education, financial information, and disciplinary history. (11/5/09 Page Decl. at ¶ 6.) The Unit Team further based its RRC placement determination on the fact that Wright had arranged to live with his family in Hillside, New Jersey and that Wright's family would help him reestablish himself in the community following his release. (*Id.* at ¶¶ 8-10.) Moreover, the Unit Team based its recommendation on the fact that the RRC petitioner requested in New Jersey has limited bed space.[2] (*Id.* at ¶¶ 9-10.) Based on this information, the Unit Team specifically found "that a placement of 179 days in a RRC was sufficient for Petitioner because he was going to live with his family and would have his family's assistance in reestablishing himself in the community"

---

[2] Although there is generally limited bed space in the Newark RRC, in response to the court's inquiry, respondent reported that, as of February 5, 2010, there is a bed available there. (2/5/10 Page Decl. at ¶ 7.)

and therefore "could focus on obtaining post-release
employment." (*Id.* at ¶ 10.)

In his Reply, petitioner claims that, contrary to the
Unit Team's assertion, he will not actually have family support
or a place of residence secured upon his release from the RRC.[3]
(Reply at 5-6.) However, as discussed above, in response to
this court's order that respondent further investigate
petitioner's newly raised claim, respondent submitted a
declaration reiterating that on February 5, 2010, Wright himself
confirmed that he will live with his cousin in New Jersey upon
release from the RRC. (2/5/10 Page Decl. at ¶ 8.) Respondent
also expounded on the facts known to the Unit Team on June 15,
2009, the time it made its final determination that Wright had
adequate family support. (*Id.* at ¶¶ 4-6.) Specifically, the
respondent clarified that on March 2, 2009, Wright met with his
case manager and informed her that he would live with his cousin
in Hillside, New Jersey after his release from the RRC. (*Id.* at
¶ 4 and Ex. 1.) On the same date, Wright signed a "Supervision
Release Plan" which listed the contact information for his
cousin. *Id.* at ¶ 4 and Ex. 1.) Moreover, on April 20, 2009,
the BOP received a letter from Congressman Donald M. Payne

---

[3] Specifically, petitioner contends that, prior to receiving his RRC placement
recommendation, he was informed by his Unit Team that unless he had a New
Jersey residence he could not be relocated to the Newark RRC. (Reply at 5-
6.) Thus, petitioner alleges he was "forced/compelled" to provide the
release address of a distant cousin in New Jersey simply to avoid being
returned to South Carolina where he feared that he would recidivate. (*Id.*)

11

("Payne") in which Payne indicated that Wright's uncle had written to him in hopes of having Wright immediately placed in a RRC. (*Id.* at ¶ 6 and Exs. 3, 4.) Respondent stated that it took this letter as evidence of Wright's family support. (2/5/10 Resp't Letter at 4-5.) Further, on May 19, 2009, a representative of the Probation Office for the District of New Jersey informed Page that Wright's cousin had in fact agreed to allow Wright to live with her. (2/5/10 Page Decl. at ¶ 5 and Ex. 2.) Based on respondent's latest submission, the court finds that petitioner's allegation in his Reply that he will not have family support is unsubstantiated, and explicitly contradicted by his own statement and the evidence submitted by respondent.

Thus, the court finds that Wright's RRC placement recommendation was properly based on his criminal history, education, financial information, family situation, as well as the resources of the RRC facility requested by Wright. As the Unit Team's recommendation was made in accordance with the five statutory factors contained in 18 U.S.C. § 3621(b), the court may not disturb this recommendation, especially in light of the broad discretion the BOP was given by Congress. *See Levine*, 455 F.3d at 83 ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility."); *see also Daraio*, 2009 WL

303995, at *1-2, 7 (upholding petitioner's RRC placement recommendation where BOP's determination was made in accordance with statutory requirements, despite the fact that petitioner's husband had died while she was in prison, leaving her as the sole provider for her learning disabled, minor son).

Likewise, Wright's argument that the MDC maintains a "practice of categorically rejecting any inmate from receiving 'good faith' consideration" for more than a six month RRC placement must fail. (Reply at 1.) Based on the foregoing, it is clear that Wright's Unit Team made its RRC placement recommendation after a careful assessment of petitioner's individual needs. (11/5/09 Page Decl. at ¶¶ 6, 8-10 and Ex. 1 and 2; 2/5/10 Page Decl. at ¶¶ 4-6.) Although Wright provides examples of other MDC inmates receiving six month RRC placements (Reply at 2), this is insufficient to demonstrate that the MDC has failed in good faith to consider these applicants for more than a six month placement. The court thus finds that the respondent did not abuse its discretion in recommending Wright for a six month RRC placement. *See, e.g.*, *Snyder v. Angelini*, No. 07-CV-3073, 2008 WL 4773142, at *3 (E.D.N.Y. Oct. 27, 2008) (upholding petitioner's RRC placement recommendation, despite the BOP's policy of requiring an "extraordinary justification" for a RRC placement longer than six months).

13

## B. Equal Protection Claim

### 1. Legal Standard

The Equal Protection Clause requires that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr, Inc.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a petitioner must first show some element of intentional or purposeful discrimination accompanied the disparate treatment. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."). The "discriminatory purpose" implies that the offending party selected a particular course of action, at least in part because of its adverse effects upon an identifiable group. *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987).

In addition to showing "purposeful discrimination," the petitioner must also demonstrate that the unequal treatment is unable to pass the appropriate level of scrutiny. *Phillips*,

408 F.3d at 129. Prisoners are not a suspect class.[4] *See, e.g., Lee v. Governor of State of N.Y.*, 87 F.3d 55, 60 (2d Cir. 1996). Therefore, the appropriate level of scrutiny is whether the treatment was reasonably related to a legitimate penal interest. *Phillips*, 408 F.3d at 129.

**2. Analysis**

Petitioner's equal protection claim is without merit. Petitioner's argument that other inmates with shorter prison terms are granted the same amount of RRC placement does not sufficiently demonstrate that petitioner has been the victim of purposeful discrimination. There is no evidence that the BOP made Wright's RRC placement recommendation because of purposeful discrimination directed against him. To the contrary, as previously discussed, petitioner's Unit Team conducted an individualized investigation of petitioner's post-release needs and considered the factors proscribed by statute when determining that a 179-day RRC placement was appropriate. (11/5/09 Page Decl. at ¶¶ 6, 8-10 and Ex. 1 and 2; 2/5/10 Page Decl. at ¶¶ 4-6.) The Unit Team believed that this recommendation would provide petitioner with the greatest likelihood of successful reintegration into the community. (*Id*. at ¶10.) Because the court finds that the respondent based Wright's RRC placement recommendation on factors lacking

---

[4] Petitioner makes no assertion that he is a member of any other suspect or protected class. (*See generally* Pet. and Reply.)

discriminatory motive, Wright's argument that he has been the victim of purposeful discrimination must fail.

Moreover, the Unit Team's placement recommendation was reasonably related to legitimate penal interests. Here, the legitimate interests include overcrowding of RRCs and the successful integration of prisoners into society. The Unit Team's RRC recommendation of 179 days, based on an individualized consideration of petitioner's situation, is reasonably related to these legitimate penal interests. Thus, petitioner's equal protection claim must be denied.

## CONCLUSION

For the foregoing reasons, the court denies Wright's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Clerk of the Court is respectfully directed to enter judgment accordingly, to close the case and to serve a copy of this Memorandum and Order upon the petitioner.

**SO ORDERED.**

Dated: February 18, 2010
      Brooklyn, New York

                                                      _____/s/_____
                                            KIYO A. MATSUMOTO
                                            United States District Judge
                                            Eastern District of New York